## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| EDREAN SNOWDEN, individually, and by and through her Power of Attorney, CLARA SNOWDEN, | * * * | CIVIL ACTION NO.: 1:21-cv-158 |
| Plaintiff, | * | |
| v. | * | |
| AMEDISYS HOME HEALTH OF ALABAMA, LLC, AMEDISYS ALABAMA, LLC, AMEDISYS HOLDING, LLC, AMEDISYS HOME HEALTH, INC. OF ALABAMA, AND AMEDISYS HOSPICE, LLC | * * * | |
| Defendants. | * * | |

## COMPLAINT

Edrean Snowden, individually, and by and through her Power of Attorney, Clara Snowden, brings the following Complaint against Amedisys Home Health of Alabama, LLC, Amedisys Alabama, LLC, Amedisys Holding, LLC, Amedisys Home Health, Inc. of Alabama, and Amedisys Hospice, LLC.

## PARTIES, JURISDICTION, AND VENUE

1. Edrean Snowden ("Plaintiff") is a resident citizen of Baldwin County, Alabama.

2. Plaintiff, Edrean Snowden, granted Power of Attorney to her daughter, Clara Snowden, on December 10, 2020. Clara Snowden is a resident citizen of Baldwin County, Alabama.

3. Defendants, Amedisys Home Health of Alabama, LLC, Amedisys Alabama, LLC, Amedisys Holding, LLC, Amedisys Home Health Inc. of Alabama, and Amedisys Hospice, LLC (collectively referred to as "Defendants") are foreign limited liability companies, with corporate headquarters in Baton Rouge, Louisiana, and are registered with the Alabama Secretary of State.

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that there is complete diversity of citizenship between Plaintiffs and Defendants and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

6. Plaintiff, Edrean Snowden, is a 91-year-old female with a history of medical issues.

7. On November 4, 2020, Defendants' employee Physical Therapist Assistant (PTA) Mary Bramlett negligently and/or wantonly allowed the Plaintiff Edrean Snowden to fall in her home while providing physical therapy.

8. Immediately prior to becoming a home health care patient of Defendants, Edrean Snowden was hospitalized for three days for hypertension, Coumadin anti-coagulation therapy, and dizziness. Plaintiff was discharged from Thomas Hospital on October 5, 2020. Home health care from Defendants was ordered upon her discharge.

9. Defendants first began providing home health care to Edrean Snowden on October 5, 2020. Her relevant diagnoses on the date of admission to Defendants' home health care were

gait dizziness and giddiness, primary generalized (osteo) arthritis, other disorders of bone density and structure at an unspecified site, among other medical conditions.

10. The initial Plan of Care on October 5, 2020 in Defendants' medical records of Plaintiff include "… SN to observe/assess risk for falls and instruct in fall prevention, home safety… fall reduction management …." In fact, one of the goals for discharge from home health was "… patient/caregiver able to identify fall risk factors and implement strategies to minimize fall risk …." It is extensively documented in the medical records created by Defendants that Plaintiff was at high risk for falling.

11. On October 14, 2020, Defendants document that a long-term goal of patient is to demonstrate improved ambulation from her den to her bedroom. A short-term goal on the same date is "patient to perform LE [lower extremity] strengthening EX [exercises] in order to amb (*sic*) [ambulate] with a more upright posture and a step through gait pattern safely." Throughout her treatment by Defendants, Plaintiff was at high risk for falling and on fall precautions.

12. Defendants provided home health physical therapy on seven separate home visits, including the final day on November 4, 2020. Mary Bramlett, PTA ("PTA Bramlett') was the caregiver on at least five of those home visits, including the final visit. Thus, PTA Bramlett was very familiar with Plaintiff and her instability, weakness, and altered gait.

13. During the home visit by PTA Bramlett on November 2, 2020, she documented in the medical records that Plaintiff has decreased gait and balance. In the "Interventions Provided" section of the medical records from the November 2, 2020 home visit, it is documented that "[p]t required a CGA for safety…."[1] CGA is the widely accepted abbreviation for contact guard assist.

---

[1] Common Physical Therapy Abbreviations: https://www.ptprogress.com/common-physical-therapy-abbreviations (last viewed March 29, 2021).

14.     One such CGA is a "ambulation gait belt", as shown in the illustration below.² The ambulation gait belt is a basic tool of care-givers, both in home health and in the hospital setting. The purpose of the ambulation gait belt is to allow the care-giver to assist a weak or unsteady patient while standing, ambulating, or moving from a sitting to standing position, and vice-versa.



15.     Two days later, on November 4, 2020, the main focus for the visit was to continue to increase strength and gait. PTA Bramlett arrived at the home of Plaintiff and completed the first set of the home physical therapy while Plaintiff was seated in the den. After the initial exercises, PTA Bramlett instructed Plaintiff to ambulate alone to the kitchen, where PTA Bramlett was waiting. No fall prevention methods were utilized by PTA Bramlett, such as an ambulation gait belt around Plaintiff's waist. In fact, PTA Bramlett did not even walk beside Plaintiff.

16.     Once Plaintiff arrived in the kitchen, PTA Bramlett attempted to place a 2-pound ankle weight on Plaintiff's left lower leg, while Plaintiff was leaning on a kitchen counter. Plaintiff reports that PTA Bramlett had Plaintiff raise her left leg off of the floor to facilitate the placement

---

² Care Given Aide: https://www.caregiver-aid.com/ambulation-gait-belt/(last viewed March 29, 2021).

of the 2-pound weight on the left lower leg. As PTA Bramlett was in the process of placing the 2-pound weight on Plaintiff's left lower leg, Plaintiff became unbalanced while standing on one foot, and crashed onto the floor, landing on her right side.

17.     The Plaintiff was transported by ambulance to a free-standing ancillary emergency room of Thomas Hospital, located in Malbis, Alabama, where x-rays revealed a severely displaced fractured right hip and bruised right shoulder. Plaintiff was then transported to the main facility of Thomas Hospital as an emergency admission. She underwent surgery on her right hip on November 5, 2020. Approximately ten days later, Plaintiff was readmitted to the hospital for a deep vein thrombosis in her right lower leg. This is the same leg in which she suffered the fractured hip. She remained in the hospital for an additional ten days.

18.     The trauma of the fracture and the resultant surgery led to a downward spiral of Plaintiff's overall health and Plaintiff's medical conditions have been exacerbated. While re-hospitalized for the deep vein thrombosis in her right lower leg, Plaintiff's chronic gastritis resulted in life-threatening gastro-intestinal bleeding ("GI bleed"), which may have been caused or exacerbated by the additional anticoagulation medications required secondary to the fractured right hip and subsequent deep vein thrombosis. Because of the GI bleed, Plaintiff was given a total of six units of blood while hospitalized.

19.     Prior to the Plaintiff's fall the Plaintiff was very active and enjoyed attending church services regularly. Her Pastor has known her for eleven years and reports that during those years, Plaintiff entered and exited the church sanctuary unassisted, and freely moved about the facility without any need for help from others. Plaintiff reports that prior to her fractured hip, she would routinely walk approximately one-half of a mile or more per day to get exercise.  She doing yard work, and did not having any trouble doing any of these activities.

20. At all times, PTA Bramlett was acting within the line and scope of her employment for the Defendants. At all times, PTA Bramlett was an agent/employee and representative of Defendants. Thus, Defendants are vicariously liable for her negligence, wantonness, and breach of the standards of care.

21. Defendants' negligence and/or wantonness has permanently and negatively impacted the quality of Plaintiff's life and likely shortened her life, as well. There are numerous studies in the medical literature that document that a fractured hip in the elderly shortens their life expectancy.[3] Moreover, there is an increased risk of dying in the first year following a hip fracture.[4]

22. As a proximate result of the breach in the standards of care and negligent and wanton care of Plaintiff by the Defendants, Plaintiff suffered a fractured hip which required a hospital admission and surgery. Plaintiff developed a life-threatening deep vein thrombosis in her lower right leg, and had to be re-admitted to the hospital. Plaintiff suffered a GI bleed and had multiple blood transfusions. She has spent the days since the fractured hip injury in bed primarily because she is too weak to sit for very long and/or even attempt to walk.

23. Plaintiff suffered humiliation when, while waiting on the ambulance to arrive on the day of her injury, she was forced to urinate into a five-gallon bucket in full view of PTA Bramlett and family members because she could not walk to the bathroom in her home and she had to urinate. Hip fractures are notoriously painful, and Plaintiff suffered from the fracture caused by the negligence of Defendants and PTA Bramlett, and she continues to suffer. Plaintiff became debilitated, and now spends what is left of her life primarily confined to bed.

---

[3] "Loss of Years After a Hip Fracture": https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2823336/#CIT0017(last viewed March 29, 2021).
[4] *Id*.

6

## COUNT I

### (Alabama Medical Liability Act: Negligence/Wantonness)

Plaintiff alleges as follows against Defendants Amedisys Home Health of Alabama, LLC, Amedisys Alabama, LLC, and Amedisys Holding, LLC as follows.

24. Plaintiff adopts and re-alleges all preceding paragraphs as if fully set forth herein.

25. Said Defendants owed Plaintiff the duty to provide her with the medical care in a home health setting that compiled with the applicable standard of care. That is, the Defendants were required to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise in a like case.

26. Defendants negligently and/or wantonly breached the standard of care in one or more of the following ways:

a. Defendants negligent and/or wanton failure to draft a comprehensive plan of care and ensure that it was executed properly;

b. Defendants negligent and/or wanton failure to provide Contact Guard Assists ("CGA"), such as an ambulation gait belt, and properly instruct its employees in the necessity and requirement of use of an ambulation gait belt;

c. Defendants negligent and/or failure to be vigilant and attentive at all times while Plaintiff was under the care of Defendants to prevent any foreseeable injuries;

d. Defendants negligent and/or wanton failure to ensure the physical safety of Plaintiff, who was known to be weak and have an unsteady gait;

  e. Defendants negligent and/or wanton failure of Defendants to properly apply a 2-pound ankle weight to Plaintiff as evidence by instructing Plaintiff to stand on one leg while PTA Bramlett applied the 2-pound weight.

  f. Negligently and/or wantonly failure to adequately hire, educate, train, and/or supervise the physical therapists including PTA Bramlett, physical therapy assistants and other employees.

  g. Negligent and/or wanton failure to provide training and instruction as to implementing reasonable medical interventions to prevent Plaintiff from falling;

  h. Negligent and/or wanton failure to implement adequate policies, procedures and the like concerning the proper care of home health patients.

  27. As a proximate and foreseeable result of the negligent and/or wanton acts or omissions of Defendants, Plaintiff fell and suffered severe and significant personal injuries including, but not limited to, a fractured hip, hospital admission, surgery under general anesthesia, a lengthy and repeated hospitalization for deep vein thromboses, a life-threatening GI bleed, and subsequent home health care. She experienced humiliation, severe pain and suffering, mental anguish, annoyance, inconvenience, and setbacks in her overall health and well-being. She became so debilitated that she is confined to bed. Her prognosis is very poor.

  28. Defendants acted at all times material with a conscious disregard for the rights and safety of Plaintiff.

  29. The quality of Plaintiff's life and her life-expectancy have been adversely affected by her injuries, which were foreseeable and preventable. She has incurred and is reasonably expected to incur medical bills and other special damages that proximately resulted from her injuries.

30.     Plaintiff claims all compensatory damages resulting from the breach of duties as alleged including, but not limited to, all past, present, and future medical bills associated with the injuries sustained on November 4, 2020; all bills associated with her rehabilitative services; and all additional out of pocket expenses incurred by Plaintiff and, for past, present and future pain, suffering, mental anguish, anxiety, worry, annoyance, inconvenience, set-backs in her overall health, life-expectancy and well-being pursuant to the Alabama Medical Liability Act.

31.     Plaintiff, demands judgment against Defendants for punitive damages pursuant to the Alabama Medical Liability Act.

WHEREFORE, Plaintiff demands judgment against Defendants for all compensatory and punitive damages allowed by law as the jury may assess, plus interests and costs, pursuant to the Alabama Medical Liability Act.

**PLAINTIFF RESPECTFULLY DEMANDS A TRIAL BY JURY.**

Respectfully Submitted,

TAYLOR MARTINO, PC
Attorneys for Plaintiff

By: */s/ Richard H. Taylor*
RICHARD H. TAYLOR (TAYLR8925)
455 Saint Louis Street, Suite 2100
Mobile, Alabama 36602
Telephone: (251) 433-3131
Facsimile: (251) 433-4207
Email: richardtaylor@taylormartino.com

*/s/ Ruth R. Lichtenfeld*
RUTH R. LICHTENFELD
Alabama Bar Number: 2704Y10D
455 Saint Louis Street, Suite 2100
Mobile, Alabama 36602
Telephone: (251) 433-3131
Facsimile: (251) 433-4207

Email: ruth@taylormartino.com

**DEFENDANTS TO BE SERVED VIA CERTIFIED MAIL AS FOLLOWS:**

Amedisys Home Health of Alabama, LLC
c/o Corporation Service Company, LLC
641 South Lawrence Street
Montgomery, Alabama 36104

Amedisys Alabama, LLC
c/o Corporation Service Company, LLC
641 South Lawrence Street
Montgomery, Alabama 36104

Amedisys Holding, LLC
c/o Corporation Service Company, LLC
641 South Lawrence Street
Montgomery, Alabama 36104

Amedisys Home Health, Inc. of Alabama
c/o Corporation Service Company, LLC
641 South Lawrence Street
Montgomery, Alabama 36104

Amedisys Hospice, LLC
c/o Corporation Service Company, LLC
641 South Lawrence Street
Montgomery, Alabama 36104